AO 106 (Rev. 04/10)  Application for a Search Warrant

```
                                                          ┌─────────────────────────┐
                                                          │ ___ FILED  ___ LODGED   │
                                                          │        RECEIVED         │
                                                          │                         │
                                                          │      FEB 20 2019         │
                                                          │                         │
                                                          │  CLERK U.S. DISTRICT COURT │
                                                          │ WESTERN DISTRICT OF WASHINGTON AT TACOMA │
                                                          │ BY                  DEPUTY │
                                                          └─────────────────────────┘
```

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**The two SUBJECT DEVICES more particularly<br>described in Attachment A** | )<br>)<br>)<br>)<br>)<br>) |

Case No. MJ 19-5027

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Western___ District of ___Washington___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1), 846, and<br>18 USC §§ 1956 and 1957 | Distribution and Possession with intent to distribute controlled substances and money laundering offenses. |

The application is based on these facts:

See Attached Affidavit of FBI TFO Tyson Sagiao.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Tyson Sagio, FBI Task Force Officer**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/20/19 356pm

_____
*Judge's signature*

City and state:  Tacoma, Washington

**David W. Christel, U.S. Magistrate Judge**
*Printed name and title*

2018R01401

**AFFIDAVIT**

STATE OF WASHINGTON     )
                             )   ss
COUNTY OF PIERCE         )

    I, Tyson Sagiao, Task Force Officer, Federal Bureau of Investigation (FBI),
United States Department of Justice, being first duly sworn on oath, depose and state:

## MY BACKGROUND AND QUALIFICATIONS

    1.    I am a commissioned law enforcement officer with the Kent Police
Department (KPD), currently assigned to the Special Investigations Unit.  I am a
successful graduate from both the Washington State Criminal Justice Training
Commission (police academy) in Burien, Washington, and the Federal Law Enforcement
Training Center in Glynco, Georgia.  In 2015, I was sworn in as a task force officer with
the FBI Safe Streets Task Force (Seattle), and was granted authority to enforce violations
of Title 18 and Title 21 of the United States Code.  In total, I have been a commissioned
law enforcement officer since October 1999.  I have training and experience in
investigating numerous types of criminal offenses, including those relating to the
distribution of narcotics and possession of firearms.

## PURPOSE OF AFFIDAVIT

    2.    This Affidavit is submitted in support of an application for a warrant
authorizing the search of the following cellular telephones ("SUBJECT DEVICE 1" and
"SUBJECT DEVICE 2"):

    a.    "SUBJECT DEVICE 1" is an LG smartphone, with SIM card, Model
                LGMP260, Serial Number 805CYBD833325, IMEI: 354446-09-833325-2,
                believed to belong to Michael McPHERSON, currently stored in Kent
                Police Department evidence as Tag Number 180003889, Item Number 21,
                under case number 18-13573, in the City of Kent, County of King, State of
                Washington.

AFFIDAVIT OF TYSON SAGIAO - 1
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1        b.      "SUBJECT DEVICE 2" is an LG smartphone, without SIM card, Model

2                    LG-K330, Serial Number 605CYNL691919, IMEI: 354890-07-691919-6,

3                    believed to belong to Michael McPHERSON, currently stored in Kent

4                    Police Department evidence as Tag Number 180003889, Item Number 21,

5                    under case number 18-13573, in the City of Kent, County of King, State of

6                    Washington.

7        3.      The information set forth in this Affidavit consists of information I have

8 gathered and observed firsthand through the course of this investigation to date, as well

9 as information relayed to me by other law enforcement personnel, my review of law

10 enforcement reports, interviews of witnesses, review and analysis of toll records, and

11 other information.  Since I am submitting this Affidavit for the limited purpose of

12 obtaining authorization for a search warrant, I have not included every fact I know

13 concerning this investigation.  I have set forth only the facts that I believe are essential to

14 establish the necessary foundation for the issue of such warrant.

15        4.      I know through my own training and experience, as well as the training and

16 experience of other law enforcement officers familiar with this investigation, that

17 individuals involved in the distribution of controlled substances and other criminal

18 activity often employ cell phones in their illicit business.  Indeed, drug dealers often keep

19 several such phones, with different numbers, for communicating with both customers and

20 their own suppliers to arrange sales or purchases of illegal drugs.  Some dealers will

21 periodically switch out their phones (*i.e.*, change their phone number), hoping that doing

22 so will thwart detection and possible monitoring by law enforcement.  In utilizing those

23 phones, they sometimes use vague references and/or coded words and phrases when

24 discussing illegal activity.  If such words and phrases are referred to in the instant

25 application, I have used my training and experience, as well as the training and

26 experience of other law enforcement officers familiar with this investigation, to also

27 include what I believe to be an accurate translation of these coded words and phrases.

28

AFFIDAVIT OF TYSON SAGIAO - 2
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## SUMMARY OF PROBABLE CAUSE

5.      The Kent Police Department and Federal Bureau of Investigation initiated a narcotics investigation in 2018 into an individual identified as Michael Gordon McPHERSON.  During the investigation, law enforcement also identified Mikayla Ann CHERNEKOFF as McPHERSON's girlfriend.  I have since learned that they were married in Clark County, Nevada on November 16, 2017.  This investigation ultimately led law enforcement to obtaining a narcotics search warrant for MCPHERSON's Bonney Lake (unincorporated Pierce County) residence.  The affidavit in support of that warrant included information regarding two controlled buys of methamphetamine by a confidential informant (CI) from MCPHERSON occurring at the same Pierce County house.

6.      The aforementioned search warrant was authorized on September 7, 2018 by the Honorable Judge Karla Buttorff, Pierce County District Court (Warrant No. 18-1-51845-0).  The aforementioned warrant was for the crime of Violation of the Uniform Controlled Substance Act (RCW 69.50.401), and allowed investigators seven days to execute the search.

7.      During execution of the above-listed narcotics warrant on September 12, 2018, a search of the residence and other related areas authorized by the Court resulted in investigators discovering numerous items that were not specifically listed on the initial warrant.  Based on the discovery of those items, a second warrant was obtained to seize evidence of the crimes of Financial Fraud (RCW 9A.56.320), Possession of Stolen Property in the Second Degree (RCW 9A.56.160), Forgery (RCW 9A.60.020), and Possession of Stolen Vehicle (RCW 9A.56.068).  This second warrant was authorized via electronic means on September 12, 2018 by the Honorable Judge Grant Blinn, Pierce County Superior Court (Warrant No. 18-1-51873-5).

8.      Among the items seized during the execution of the listed warrant(s) were numerous W-2G tax forms in both CHERNEKOFF's and McPHERSON's names.  The forms, which are entitled "Certain Gambling Winnings," document the date, time,

AFFIDAVIT OF TYSON SAGIAO - 3
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    amount and winner's name of gambling winnings. The forms also denote which casino

2    paid out the winnings. Although the overwhelming majority of the W-2G forms with

3    McPHERSON and CHERNEKOFF listed as the winners were issued by the Emerald

4    Queen Casino, a few from the Muckleshoot Casino listing McPHERSON as the winner

5    were also discovered.

6         9.    Seized from inside a rolling suitcase, which was located in a basement

7    bedroom shared by McPHERSON and CHERNEKOFF, were two (2) stolen firearms,

8    suspected drug scale(s) and drug packaging, approximately 185 gross grams of suspected

9    methamphetamine, approximately 108 gross grams of suspected heroin, over $16,000 in

10   cash, an Emerald Queen Casino W-2G slip, a Muckleshoot Jackpot Check and a

11   Muckleshoot Bingo W-2G slip, with all three of the latter having McPHERSON's name

12   on them. Also seized from inside the same rolling suitcase were SUBJECT DEVICE 1

13   and SUBJECT DEVICE 2.[1]  Additional cash in the approximate amount of $1,323 was

14   also seized from McPHERSON's person.

15        10.    Seized from CHERNEKOFF's purse was approximately $6,876 in cash.

16   Also found with the money was a gambling winnings statement (Form W-2G) from the

17   Emerald Queen Casino, in Fife. The receipt displayed McPHERSON's name and listed

18   his winnings as $1,960 on September 7, 2018.

19        11.    The phone numbers for both SUBJECT DEVICES are currently unknown

20   to investigators. However, the presence of the SUBJECT DEVICES in the

21   aforementioned roller bag containing numerous items of evidence of illegal narcotics

22   sales lends weight to the relevance of the SUBJECT DEVICES being utilized to facilitate

23

24

25   _____

26   [1] While the original Superior Court search warrant specifically authorized the collection of any cell phones found during the search of the residence, the affidavit in support of the warrant had noted the

27   affiant's understanding that "that any future forensic examination of any cell phone(s) seized pursuant to the issuance of this warrant would require additional Court approval" beyond that sought as part of that

28   warrant's application.

AFFIDAVIT OF TYSON SAGIAO - 4
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  such mentioned activity.[2]  Additionally, the presence in the same roller bag (found in
2  McPHERSON's bedroom) of documents bearing McPHERSON's name along with the
3  SUBJECT DEVICES, further demonstrate probable control and/or ownership of the
4  listed SUBJECT DEVICES.

5       12.    In addition to evidence of illegal narcotics distribution being located,
6  investigators also located numerous items of evidence throughout the house related to
7  financial fraud, forgery and other crime(s) of deception.  For example, such items found
8  inside the residence included:  numerous financial accounts and personal information
9  belonging to numerous different persons; identifications belonging to numerous different
10 persons; numerous laptops and tablets, which are commonly utilized to generate
11 fraudulent templates for identifications and access devices; checks belonging to several
12 different persons; fraudulent identifications; two embossing machines; and a significant
13 amount of blank credit cards.

14      13.    In response to a previous request that I had made after execution of the
15 search warrant, I received from the Washington State Department of Employment
16 Security, documents dated September 21, 2018 concerning reported wages for
17 McPHERSON and CHERNEKOFF.  The time periods covered in the reports was the 3rd
18 quarter of 2015 until the 2nd quarter of 2018.  Both reports showed no reported wages for
19 either McPHERSON or CHERNEKOFF.

20      14.    On September 25, 2018, I sent an email to Martin Hughes, the Surveillance
21 Assistant Director for the Emerald Queen Casino.  The purpose of the email was to
22 inquire about the existence of any corresponding video surveillance to the dates and times
23 stamped on the numerous gambling receipts that were recovered in McPHERSON's and
24 CHERNEKOFF's names.  Hughes responded to me later that same day informing me that
25 although the Emerald Queen Casino had McPHERSON's and CHERNEKOFF's names

26

27

28

[2] For instance, the CI who conducted the two earlier controlled buys leading up to the Superior Court
search warrant for the house, had contacted McPHERSON by phone (at 206-343-7804), however,
investigators did not utilize phone contact with McPHERSON to facilitate those buys.

AFFIDAVIT OF TYSON SAGIAO - 5
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  in their system, they did not possess any video surveillance for the dates I requested due
2  to the video retention time.

3        15.     In a follow-up email response to him that same day, I inquired about the
4  date and time stamps on the gambling winnings receipts. For instance, I asked what a
5  possible reason would be for multiple winnings being paid to the same person, on the
6  same date with different times in close proximity to each other, and whether or not the
7  date/time stamped at the top of the forms denote when the claim for winnings was
8  processed. Hughes referred me to Grace Keyes, Title 31 Compliance Officer for the
9  Emerald Queen Casino.

10       16.     On September 28, 2018, Keyes responded to my email informing me that
11 the date and time stamp at the top of the tax form indicates the time the cashier prepared
12 the tax form after the jackpot was won. Keyes added in her response, "These particular
13 guest [sic] play in our high limit area and typically play multiple slot machines at the
14 same time which resulted in these jackpots being won minutes apart." Keyes later
15 clarified for me that the word "guest" that appears in the above listed email quote I
16 received from her was meant to reference both McPHERSON and CHERNEKOFF.

17       17.     I inquired that same date as to what was considered "high limit." On
18 October 1, 2018, Keyes responded to my email, "Our high limit slot machines go as high
19 as $20 per spin."

20       18.     On October 9, 2018, I sent Keyes another email inquiring as to whether or
21 not there was a way to identify how much money the suspects have spent at the Emerald
22 Queen Casino. Keyes responded to my email that same day, stating, "What I can tell you
23 is from 2017 to 2018 they have won over $800k in high limit jackpots."

24       19.     Keyes advised me that a court order would be required for the Emerald
25 Queen Casino to release gambling winnings records and other related information
26 retained by the casino for McPHERSON and CHERNEKOFF. During a follow up
27 telephone call with Keyes on October 30, 2018, she informed me that the casino would
28 need a specific timeframe in order to process the request for records. She stated that the

AFFIDAVIT OF TYSON SAGIAO - 6
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  casino retains player records for five years.  She advised that McPHERSON's casino

2  activity noticeably increased in 2017, and suggested that I thus request records dating

3  back to 2016.

4       20.    On October 30, 2018, I obtained a signed search warrant (Pierce County

5  Superior Court Search Warrant No. 18-1-52198-1) from the Honorable Judge G. Blinn

6  for records possessed by the Emerald Queen Casino.  That same morning, I provided a

7  physical copy (in-person) of the search warrant to Grace Keyes at the Emerald Queen

8  Casino, located at 5700 Pacific Highway East, in Fife (same address listed in the

9  aforementioned search warrant).

10       21.    On November 2, 2018, I met with Grace Keyes at the Emerald Queen

11  Casino in Fife to retrieve records previously requested via the above-referenced search

12  warrant.  Keyes provided me with a large envelope that contained several documents

13  related to the gambling winnings of McPHERSON and CHERNEKOFF.

14       22.    A review of those Emerald Queen records shows that from June 14, 2016 to

15  October 22, 2018, Emerald Queen Casino reported that McPHERSON was paid

16  approximately $781,175.55 in jackpot winnings from slot machines.  He was also paid an

17  additional $44,965.02 in ticket redemptions by a casino cashier.  McPHERSON's

18  approximate grand total winnings during the aforementioned timeframe is $826,140.57.

19       23.    A review of those same Emerald Queen records shows that from September

20  30, 2017 to September 12, 2018, Emerald Queen Casino reported that CHERNEKOFF

21  was paid approximately $103,677.30 in jackpot winnings from slot machines.  She was

22  also paid an additional $11,052.71 in ticket redemptions by a casino cashier.

23  CHERNEKOFF's approximate grand total winnings during the aforementioned

24  timeframe is $114,729.47.

25       24.    As laid out above, in addition to Emerald Queen Casino winnings receipts,

26  investigators executing the residential search warrant on September 12, 2018 also

27  discovered 2018 W-2G gambling winnings receipts from the Muckleshoot Casino in

28  McPHERSON's name.

AFFIDAVIT OF TYSON SAGIAO - 7
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

25.     On November 29, 2018, I received an email from David Gilmore, who works for the Muckleshoot Gaming Commission.  He informed me that both McPHERSON and CHERNEKOFF possess Preferred Player Card (PPC) accounts at the Muckleshoot Casino.  He provided McPHERSON's PPC account number as 543463 and CHERNEKOFF's as 886060.  He also added that McPHERSON was recently at the Muckleshoot Casino, but did not specify the exact date.  Gilmore added in his email that in addition to finding out what their respective winnings were at the Muckleshoot, the casino should also be able to indicate how much money they spent in any given time, assuming they used their respective player cards.

26.     Both of the listed SUBJECT DEVICES were entered into Kent Police Department evidence as a single item, under case 18-13573 Tag Number 180003889, Item Number 21.  Besides removing the batteries to reveal the serial and IMEI numbers, neither SUBJECT DEVICE has been searched or forensically examined by law enforcement in this matter prior to this application.

27.     I believe that the SUBJECT DEVICES, believed to belong to McPHERSON, contain additional evidence, in the form of text messages, phone call logs, stored contacts, and stored videos and photographs, of his involvement in the distribution of illicit narcotics, and possibly fraud, and that a search of the SUBJECT DEVICES will yield such evidence.

## COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

28.     Based on my training and experience, including experience obtained through participation in this and other investigations involving the distribution of controlled substances, including those targeting long-term conspiracies responsible for the distribution of controlled substances, and based upon my consultation with other experienced law enforcement agents and officers, I know that:

a.     Drug trafficking conspiracies, especially those involving large amounts of narcotics and interstate shipments, usually take place over several months or years, and

AFFIDAVIT OF TYSON SAGIAO - 8
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   continue to operate even when enforcement activity results in arrests and/or seizures of

2   drugs and/or money.

3         b.      Those involved in the distribution of illicit drugs often communicate by

4   telephone in connection with their illegal activities in order to set up meetings with

5   coconspirators, conduct drug transactions, or to arrange for the transportation drugs or

6   drug proceeds.

7         c.      Drug traffickers routinely change telephone numbers in an attempt to

8   thwart law enforcement.  When certain members of a drug trafficking organization

9   change their telephone numbers, they typically call other members to alert them of the

10  telephone number change.

11        d.      Drug traffickers often document aspects of their criminal conduct through

12  photographs or videos of themselves, their associates, their property, and their product.

13  Drug traffickers usually maintain these photographs or videos in their possession.

14        e.      Drug traffickers use mobile electronic devices including cellular telephones

15  and other wireless communication devices for the purpose of conducting their illegal

16  trafficking business.  As described below, such equipment often contains evidence of

17  these illegal activities.

18        f.      Drug traffickers commonly maintain information that reflects names,

19  addresses, vehicles, and/or telephone numbers of their suppliers, customers and

20  associates in the trafficking organization and it is common to find drug traffickers

21  keeping records of said associates in cellular telephones and other electronic devices.

22  Traffickers often maintain cellular telephones for ready access to their clientele and to

23  maintain their ongoing narcotics business.  Traffickers frequently change their cellular

24  telephone numbers to avoid detection by law enforcement, and it is common for

25  traffickers to use more than one cellular telephone at any one time.

26        g.      Drug traffickers use cellular telephones as a tool or instrumentality in

27  committing their criminal activity.  They use them to maintain contact with their

28  suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

AFFIDAVIT OF TYSON SAGIAO - 9
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   can be purchased without the location and personal information that landlines require.

2   Second, they can be easily carried to permit the user maximum flexibility in meeting

3   associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

4   Third, they can be passed between members of a drug conspiracy to allow substitution

5   when one member leaves the area temporarily.  Since cellular phone use became

6   widespread, every drug dealer I have interacted with has used one or more cellular

7   telephones for his or her drug business.  I also know that it is common for drug traffickers

8   to retain in their possession phones that they previously used, but have discontinued

9   actively using, for their drug trafficking business.  Based on my training and experience,

10   the data maintained in a cellular telephone used by a drug dealer often constitutes

11   evidence of a crime or crimes.  This includes the following:

12       •   The assigned number to the cellular telephone (known as the mobile

13           directory number or MDN), and the identifying telephone serial number

14           (known as either the Electronic Serial Number (ESN), Mobile Identification

15           Number (MIN), International Mobile Subscriber Identity (IMSI) number, or

16           the International Mobile Equipment Identity (IMEI) number) are important

17           evidence because they reveal the service provider, and allow us to obtain

18           subscriber information and uniquely identify the telephone.  This

19           information can be used to obtain toll records, to identify contacts by this

20           telephone with other cellular telephones used by co-conspirators, to identify

21           other telephones used by the same subscriber or purchased as part of a

22           package, and to confirm if the telephone was contacted by a cooperating

23           source.

24       •   The stored list of recent received calls and sent calls is important evidence.

25           It identifies telephones recently in contact with the telephone user.  This is

26           valuable information in a drug investigation because it will identify

27           telephones used by other members of the organization, such as suppliers,

28           distributors and customers, and it confirms the date and time of contacts.  If

AFFIDAVIT OF TYSON SAGIAO - 10
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

- Stored text messages are important evidence, similar to stored numbers. Dealers often discuss drug transactions and drug prices via text messaging. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

- Photographs on a cellular telephone are evidence because they help identify the user, either through his or her picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug traffickers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" information within them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where drug stashes or assets might be located.

- Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

AFFIDAVIT OF TYSON SAGIAO - 11
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    h.    Because drug traffickers in many instances will "front" (that is, sell on

2  consignment) controlled substances to their clients, or alternatively, will be "fronted"

3  these items from their suppliers, record keeping is often necessary to keep track of

4  amounts paid and owed, and such records will also be maintained close at hand so as to

5  readily ascertain current balances.  These records include "pay and owe" records to show

6  balances due for drugs sold in the past (pay) and for payments expected (owe) as to the

7  trafficker's suppliers and distributors, telephone and address listings of clients and

8  suppliers, and records of drug proceeds.  These records are commonly kept for extended

9  periods of time.

10                **REQUEST FOR NON-DISCLOSURE AND SEALING**

11    29.    This is an ongoing investigation into drug trafficking by McPHERSON.

12  Based upon my knowledge, training, and experience, it is my belief that the information

13  contained in this Affidavit, if prematurely disclosed to the public, could result in as-of-yet

14  uncharged targets' flight from prosecution, destruction of or tampering with evidence,

15  intimidation of potential witnesses, including the confidential source(s), or otherwise

16  seriously jeopardizing the ongoing investigation.  Therefore, I request this Affidavit and

17  accompanying documents be sealed and notification to the public be delayed until

18  otherwise ordered by the Court.

19    30.    In addition, I request authorization to delay notice of the search warrant for

20  the listed phones for a period of at least 30 days past the normal deadline.  I believe that

21  the investigation may ultimately lead us to numerous other individuals involved in

22  narcotics trafficking.  Notifying our targets of the existence of this investigation will

23  likely cause them to destroy evidence, flee the jurisdiction, or alter their methods thus

24  making it more difficult to dismantle the organization effectively.  Notice also could put

25  confidential sources and agents working with them in danger.  I anticipate this

26  investigation will conclude within the next 60 to 90 days.

27

28

AFFIDAVIT OF TYSON SAGIAO - 12
USAO2018R01401

1

## CONCLUSION

2        31.       Based upon the information which has been uncovered during the course of

3    this investigation, and on the advice, experience, and knowledge of other agents and

4    officers involved in this investigation, I believe these facts establish probable cause to

5    conclude that the SUBJECT DEVICES have likely been used to facilitate violations of

6    the Controlled Substances Act, specifically distribution of narcotics, conspiracy, and

7    related offenses (*e.g.*, money laundering) in the Western District of Washington, and

8    elsewhere, in violation of the Controlled Substances Act, 21 U.S.C. §§ 841 and 846.

9

10

11

12                                              TYSON SAGIAO,
                                                Task Force Officer
13                                              Federal Bureau of Investigation

14

15     Subscribed and sworn to before me this **20** day of February, 2019.

16

17

18

19                                              DAVID W. CHRISTEL
                                                United States Magistrate Judge
20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TYSON SAGIAO - 13
USAO2018R01401

**ATTACHMENT A**
**Device to be Searched**

Since its seizure on the date listed below, the following cellular telephone (SUBJECT DEVICE 1) has been in the secure custody of law enforcement, and is presently at the location listed below:

- A LG smartphone, with SIM card, Model LGMP260 Serial Number 805CYBD833325 IMEI: 354446-09-833325-2 believed to belong to Michael McPHERSON, currently stored in Kent Police Department evidence as Tag Number 180003889, Item Number 21, under case number 18-13573, in the City of Kent, County of King, State of Washington.

Since its seizure on the date listed below, the following cellular telephone (SUBJECT DEVICE 2) has been in the secure custody of law enforcement, and is presently at the location listed below:

- A LG smartphone, without SIM card, Model LG-K330 Serial Number 605CYNL691919 IMEI: 354890-07-691919-6 believed to belong to Michael McPHERSON, currently stored in Kent Police Department evidence as Tag Number 180003889, Item Number 21, under case number 18-13573, in the City of Kent, County of King, State of Washington.

## ATTACHMENT B
### Items to be seized

From the listed cellular telephone described in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes:  distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846, and money laundering offenses, in violation of Title 18, United States Code, Sections 1956 and 1957, including the following:

- Assigned telephone number and identifying serial number (e.g., ESN, MIN, IMSI, IMEI);
- Stored list of recent received, sent, or missed calls;
- Stored address records and stored contact information;
- Stored photographs of narcotics, currency, guns or other weapons, suspected criminal activity, and/or the user of the phone or co-conspirators;
- Stored text messages that relate to the above-enumerated federal crimes;
- Stored records, receipts, notes, ledgers, and other documents relating to the distribution of controlled substances and communications between members of the conspiracy; and
- Latent prints.

AFFIDAVIT OF TYSON SAGIAO - 15
USAO2018R01401

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800